UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN CLERK...
U.S. DIST...
* ... *
PM. _____
TIME A.M. _____

--------------------------------------------------------- X

UNITED STATES OF AMERICA,               :          03 CR 566 (ARR)

                                        :          <u>NOT FOR ELECTRONIC</u>
    -against-                           :          <u>OR PRINT</u>
                                        :          <u>PUBLICATION</u>

THOMAS CARBONARO, also known as "Huck," :
                                        :          <u>OPINION AND ORDER</u>
        Defendant.                      :
                                        :

--------------------------------------------------------- X

ROSS, United States District Judge:

Defendant Thomas Carbonaro was convicted, on October 23, 2003, of one count of conspiracy to murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5). He was acquitted of conspiring to possess, and possessing, firearms in furtherance of a crime of violence, as prohibited by 18 U.S.C. §§ 924(c)(1)(A)(I) and 924(o). By motion dated June 10, 2005, defendant seeks a hearing to determine whether a new trial is necessary, pursuant to Fed. R. Crim. P. 33. Defendant argues that the attorneys who represented him at trial, Valerie Amsterdam and John Jacobs, had per se or actual conflicts of interest that deprived him of his Sixth Amendment right to representation. For the reasons stated below, the court finds that a hearing is not necessary and denies defendant's motion for a new trial.

## BACKGROUND

Defendant's attorneys in this case had been appointed to represent him pursuant to the Criminal Justice Act ("CJA"). The defense attorneys were ultimately investigated by the United States Attorney's office for the Eastern District of New York in connection with a

1



$5,000 payment from one of Carbonaro's family members to Ms. Amsterdam in May of 2003. Amsterdam was charged in a multi-count indictment on April 21, 2004, alleging, inter alia, that she had conspired to defraud the United States government in violation of 18 U.S.C. § 371. The indictment against Amsterdam references an "Attorney Doe," who defendant claims is Jacobs. Amsterdam pleaded guilty, on April 4, 2005, to one count of conspiring to defraud the federal government, namely the United States District Court for the Eastern District of New York, by stating that she had not received payment from the defendant in addition to receipt of CJA funds pursuant to her appointment as counsel.

The indictment in Amsterdam's criminal case alleges that she was questioned by an FBI agent on October 1, 2003 as to whether she had received a $5,000 check from defendant or one of his family members and that Amsterdam falsely denied receiving the check. Defense counsel has affirmed, based on a conversation with Amsterdam, that this conversation occurred between Amsterdam and the FBI case agent in this case at a pre-trial conference approximately one week before trial was scheduled to begin. Defense counsel has further affirmed that Amsterdam suspected, after speaking with the agent, that she might be the target of an investigation and that co-counsel might be cooperating with the government against her.

In its brief, the government contends that the investigation of Amsterdam and Jacobs did not begin until October 21, 2003, the day after closing arguments in defendant's trial. The government further contends that Amsterdam and Jacobs were notified that they were the subject of a criminal investigation by the United States Attorney's office on or about December 8, 2003 and that on December 23, 2003, the government notified the court of the potential conflict of interest arising from that investigation. The government states that, on or about

2

January 8, 2004, the criminal investigation of Amsterdam was expanded to include her

representation of the defendant in this case. Jacobs has not been charged with any crimes

arising out of his representation of criminal defendants pursuant to a CJA appointment, and the

government has represented that he did not cooperate with the government in the investigation

or prosecution of Amsterdam. The attorneys withdrew from representing the defendant in this

case in January of 2005.

## DISCUSSION

I.      Conflict of Interest

A defendant's Sixth Amendment right to counsel includes a right to conflict-free

representation. Wood v. Georgia, 450 U.S. 261, 271 (1981). The Second Circuit has grouped

attorney conflicts of interest into three general categories: (1) conflicts so severe that they are

deemed per se violations of the Sixth Amendment and do not require a showing that the

defendant was prejudiced by his representation; (2) actual conflicts that occur when the interests

of a defendant and his attorney "diverge with respect to a material factual or legal issue or to a

course of action" and require a defendant to show that the attorney's performance was adversely

affected by the conflict; and (3) potential conflicts that occur when "the interests of the defendant

may place the attorney under inconsistent duties at some time in the future" and require a

defendant to demonstrate prejudice under the standard established in Strickland v. Washington,

466 U.S. 668 (1984). United States v. Williams, 372 F.3d 96, 102 (2d Cir. 2004).

A.      *Per Se* Conflict

"[A] per se conflict of interest requires automatic reversal without a showing of

prejudice." Id. at 103 (citation and internal quotation marks omitted). The Second Circuit has

"found such conflicts of interest only where trial counsel is not authorized to practice law and where trial counsel is implicated in the same or closely related criminal conduct for which the defendant is on trial." Id. (citations and internal quotation marks omitted). This rule has basis in the substantial risk that an attorney who is implicated in the same or closely related criminal conduct as the defendant cannot effectively represent his client because "a vigorous defense might uncover evidence or prompt testimony revealing his own crimes." United States v. Cancilla, 725 F.2d 867, 870 (2d Cir. 1984). "[T]he per se rule does not apply any time a court learns that an attorney may have committed a crime; the attorney's alleged criminal activity must be sufficiently related to the charged crimes to create a real possibility that the attorney's vigorous defense of his client will be compromised." United States v. Fulton, 5 F.3d 605, 611 (2d Cir. 1993). Where counsel is implicated in a related crime, however, the court "must assume that counsel's fear of, and desire to avoid, criminal charges, or even the reputational damage from an unfounded but ostensibly plausible accusation, will affect virtually every aspect of his or her representation of the defendant." Id. at 613.

In the instant case, defendant has acknowledged that Amsterdam's crime "was not a similar type" as the defendant's, but it "involved him (albeit, unknowingly) because it involved taking money from him in violation of the laws and rules regarding appointed counsel representation." Defendant's Brief at 4. Defendant suggests that an investigation by the United States Attorney's office for the Eastern District of New York into Amsterdam and Jacobs's conduct "appeared to be underway at the time of the trial of this matter" and attempts to argue that, if Jacobs were cooperating with the government against Amsterdam or either attorney had

4

reason to believe they might be offered leniency as a result of cooperating, a per se conflict with Carbonaro existed, mandating a new trial. The court does not agree.

As the government notes, the Second Circuit has "repeatedly stressed the limited reach of the per se rule, emphasizing that it applies only when a defendant's lawyer was unlicensed or had engaged in the defendant's crimes." United States v. Levy, 25 F.3d 146, 157n.8 (2d Cir. 1994). The court has applied the rule "without enthusiasm" and has "never purported to expand applicability of the rule beyond the sort of egregious conduct" in those two limited circumstances. Waterhouse v. Rodriguez, 848 F.2d 375, 383 (2d Cir. 1988). Where an attorney's criminal conduct "involves a completely different substantive crime and is factually and temporally distinct" from the client's conduct, "the per se rule is inapplicable." Levy, 25 F.3d at 157n.8.

In the instant case, while the defendant was involved in Amsterdam's illegal conduct, that illegal conduct was neither the same as nor closely related to the conduct for which defendant was tried. Amsterdam was charged with and pleaded guilty to receiving money from a member of the defendant's family, although she had been appointed to represent him under the CJA, and lying about that payment to federal authorities. The defendant, by contrast, was tried for conspiracy to murder in aid of racketeering as well as conspiracy to possess, and possession of, firearms in furtherance of a crime of violence. It is beyond dispute that Amsterdam's conduct involved different substantive crimes and was both factually and temporally distinct from the defendant's crimes. Moreover, while Amsterdam's conduct violated federal law, the court has no indication that defendant's payment of $5,000 to her constituted an offense of any sort whatsoever.

The court finds particularly persuasive the government's argument that the rationale for

the per se rule is not implicated in this case. A vigorous defense of the charges against the

defendant by Amsterdam or Jacobs would not have risked exposing that Amsterdam received

$5,000 from the defendant while acting as appointed CJA counsel and subsequently lied about

the payment. As Judge Lynch noted in another case involving Amsterdam and the conduct at

issue in this case, "[u]nlike the case in which a lawyer is arguably implicated in the very

misconduct charged in the case, Amsterdam would not need to fear that tactical decisions at trial

could lead to the development of further evidence against her." United States v. Ramos, 350

F.Supp.2d 413. 422 (S.D.N.Y. 2004).

The court cannot conclude that the investigation of defendant's attorneys in this case

presents a per se conflict of interest warranting a new trial.

B.     Actual Conflict

As the Second Circuit has indicated, a defense lawyer who is under investigation or

indictment plausibly has an actual conflict of interest with his client, even where the attorney's

conduct bears no relation to the crime or crimes with which her client is charged. Armienti v.

United States, 234 F.3d 820 (2d Cir. 2000). In that case, like the instant one, Armienti's lawyer

was being criminally investigated by the same United States Attorney's office that was

prosecuting him. The Second Circuit noted that this fact "present[ed] a plausible claim that his

lawyer had an actual conflict of interest." Id. at 824. Indicating that "[t]he interests of lawyer

and client may therefore have diverged with respect to their dealings with that office," the court

went on to state that "[a] lawyer in these circumstances, while dealing on behalf of his client with

the office that is prosecuting him personally may, consciously or otherwise, seek the goodwill of

the office for his own benefit. A lawyer's attempt to seek the goodwill of the prosecutor may not always be in the best interest of the lawyer's client." Id. at 824-25. In another case where the defendant's attorney was being prosecuted on unrelated charges by the same United States Attorney's office, the court indicated that the attorney "may have believed he had an interest in tempering his defense of [defendant] in order to curry favor with the prosecution, perhaps fearing that a spirited defense . . . would prompt the Government to pursue the case against [him] with greater vigor." Levy, 25 F.3d at 156. One district court in this circuit has noted that the Court of Appeals "has never wavered from considering the lawyer's position as a target of criminal investigation while representing a criminal defendant a situation of conflict of loyalties." Ramos, 350 F.Supp.2d at 420. That court went on to state that "[w]hile courts have identified the risk that a lawyer who is under indictment will have an incentive to curry favor with the government," "the Second Circuit has not treated the existence of a criminal investigation or indictment on unrelated charges as constituting a conflict that presents a per se finding of ineffectiveness." Id. at 421-22.

"Once an actual conflict is established, a defendant 'need not prove prejudice, but simply that a lapse in representation resulted from the conflict.'" Williams, 372 F.3d at 106 (quoting United States v. Malpiedi, 62 F.3d 465, 469 (2d Cir. 1995)). A defendant can prove a lapse in representation by demonstrating "that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." Levy, 372 F.3d at 106 (internal quotation marks omitted). "To show a lapse in representation, a defendant need not show 'that the alternative strategy or tactic not adopted by a conflicted counsel was reasonable, that the

7

lapse in representation affected the outcome of the trial, or even that, but for the conflict, counsel's conduct of the trial would have been different.'" Williams, 372 F.3d at 107 (quoting Malpiedi, 62 F.3d at 469). The alternative strategy need only be plausible. The Second Circuit has indicated that "[t]he test is a strict one because a defendant has a right to an attorney who can make strategic and tactical choices free from any conflict of interest." Malpiedi, 62 F.3d at 469.

In the instant case, the defendant contends that his attorneys did not meet "any standard of the professional community of this City in their performance at trial," citing Strickland. Defendant's Brief at 8. Defendant cites "constant bickering, fighting, and strategic disagreements between the two attorneys, as well as lapses of legal judgment which deprived" him of a possible verdict of acquittal. Id. The remainder of defendant's brief discusses Williams. Carbonaro argues that, unlike the defendant in that case, he was not given the choice of waiving the conflict presented by the investigation of his attorneys because the government did not inform the court of that investigation until the trial had been concluded. As a result, defendant argues, he is entitled to a new trial with conflict-free representation.

Recognizing the circuit precedent in similar cases where a defendant's attorneys were under investigation by the same United States Attorney's office prosecuting the defendant, the court is inclined to find that there was an actual conflict in this case. The court acknowledges the government's representation that the investigation into Amsterdam and Jacobs did not begin until October 21, 2003, the day after closing arguments in defendant's trial, and that counsel were not informed of the investigation until December 8, 2003. Government's Brief at 7. The court also acknowledges, however, defendant's representation that Amsterdam was questioned by the case agent in this case about the $5,000 payment on October 1, 2003, in a pre-trial conference, and

8

that Amsterdam suspected an investigation into her conduct as of that date. Assuming for the purposes of this motion that defendant's attorneys had an actual conflict of interest, the mere existence of such a conflict is insufficient to warrant a new trial.

The Second Circuit has described the inquiry into actual conflict claims as involving a "three-stage analysis." United States v. Moree, 220 F.3d 65, 69 (2d Cir. 2000). First, the defendant must establish that an actual conflict existed. Id. Second, the defendant must establish an actual lapse in representation, demonstrated by a plausible alternative defense strategy not taken up by counsel. Id. Third, the defendant must show causation–that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. Id. The Court of Appeals has described these requirements as a prima facie case to be established by the defendant. Amiel v. United States, 209 F.3d 195, 198 (2d Cir. 2000) (finding that defendant had sufficiently alleged facts that, if established at a hearing, would entitle appellant to relief on the ground that trial counsel had an actual conflict).

The court understands defendant to argue that, as a result of the actual conflict created by the investigation of the United States Attorney's office into Jacobs and Amsterdam's conduct, Amsterdam became suspicious that Jacobs might be cooperating with the government. Defendant argues that the relationship between Jacobs and Amsterdam degenerated during the course of the trial, leading to pervasive bickering and strategic disagreements between co-counsel. Citing this tension between Jacobs and Amsterdam, defendant contends that their performance fellow below an objective standard of reasonableness under prevailing professional norms, the first prong of Strickland. The court notes that defendant has not claimed that his attorneys had a potential conflict of interest, which would require him to show prejudice under

9

the Strickland standard. Notwithstanding defendant's invocation of Strickland, he does not

identify any strategy, however unreasonable or unlikely to succeed, that his attorneys forewent

and that was inherently in conflict with their interest in seeking the prosecutor's goodwill.

While the court finds that defendant has sufficiently alleged the existence of an actual

conflict, defendant has not alleged a lapse in representation. Defendant has identified no

alternative defense strategy, plausible or otherwise, that was not taken up by counsel. As a result,

defendant has not alleged any facts to establish causation–that the alternative defense was

inherently in conflict with or not undertaken due to the attorneys' interests in currying the

prosecutor's favor. Rather, defendant simply states that his attorneys bickered and had strategic

disagreements, claiming that the quality of the representation fell below an objective standard of

reasonableness. The court thus finds that defendant has not alleged facts that, if established at a

hearing, would entitle him to relief. Because the defendant has not made the necessary showing,

the court must deny defendant's motion for a new trial on the ground that his attorneys had an

actual conflict of interest affecting their representation.

Were the court to dispense with strictly applying the three-stage test for analyzing alleged

actual conflicts, the rationale for the rule makes clear that the defendant is not entitled to relief in

this case. The rule provides that, where a defense attorney's interest diverges from that of her

client and the defendant makes a plausible showing that the attorney conducted herself consistent

with her own interest, rather than her client's interest, the defendant is entitled to a remedy. In

cases such as the instant one, where the attorney was under investigation by the same office that

was prosecuting the defendant, the attorney's divergent interest is understood to be that of

currying favor with or seeking the goodwill of the prosecutor. In the instant case, assuming that

10

the attorneys' bickering during trial constituted a "lapse in representation," the court is not

persuaded that the attorneys' conduct, even if precipitated by suspicions of a potential

investigation, was plausibly consistent with their interest in currying favor with the government.[1]

Stated differently, the causal relationship between the actual conflict and the attorneys' conduct

is not of the type that gives rise to the concern that the attorneys may have plausibly acted in

accordance with their own interests as opposed to the interests of their client.

## CONCLUSION

For the foregoing reasons, the court finds that a hearing is not necessary and denies

defendant's motion for a new trial.

SO ORDERED.

_____
Allyne R. Ross
United States District Judge

Dated: July 13, 2005
       Brooklyn, New York

---

[1]While defendant opines that Jacobs may have been cooperating with the government against Amsterdam, an assertion the government states is false, defendant has not suggested that any aspect of the attorneys' representation, even under the lenient standard described in Malpiedi, plausibly indicates an attempt to curry favor with the prosecutors. It is significant that defendant does not claim that his attorneys failed to present a vigorous defense, but rather that their disagreements about strategy were apparent to the court and possibly to the jury.

SERVICE LIST:

Attorney for the United States
Joseph Lipton
United States Attorney's Office
Eastern District of New York
147 Pierrepont Street
Brooklyn, NY 11201

Attorney for Defendant
Thomas Nooter
Freeman, Nooter & Ginsberg
30 Vesey Street
Suite 100
New York, NY 10007